```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                              :
SAMUEL CONRAD, et al.,                        :    CASE NO. 1:16-CV-2525
                                              :
         Plaintiffs,                          :
                                              :
vs.                                           :    OPINION & ORDER
                                              :    [Resolving Doc. 16]
CITY OF BEREA et al.,                         :
                                              :
         Defendants.                          :
                                              :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On October 14, 2016, Plaintiffs Samuel and Geraldine Conrad filed a complaint against Defendants City of Berea and individual defendants Cyril Kleem, Linda Marginian, Alycia Vale Esson, Marvin McDonald, and Cedric Fossett.[1] Plaintiffs allege violations of 42 U.S.C. §§ 1983, 1988, and the First, Fourth and Fourteenth Amendments.[2]

On February 20, 2017, Defendants filed a motion for summary judgment.[3] For the reasons below, this Court **GRANTS** Defendants' motion for summary judgment.

### I. BACKGROUND

This case primarily concerns whether the City of Berea and City officials used housing code violations as a screen to harass Plaintiffs Samuel and Geraldine Conrad because of their Native American heritage.

In 2005, Plaintiffs bought a home at 224 Eastland Road in Berea, Ohio from Bernard and Joan Goering.[4] After buying the house, Plaintiffs transformed their yard to include native plants and a Native American "medicine wheel."[5] Plaintiffs say they made these changes to facilitate

---

[1] Doc. 1.
[2] *Id.*
[3] Doc. 16. Plaintiffs oppose. Doc. 23. Defendants reply. Doc. 24.
[4] Doc. 1 at 5.
[5] *Id.* at 6.

Case No. 1:16-CV-2525
Gwin, J.

prayer and meditation in conformity with Plaintiff Samuel Conrad's Cherokee heritage.[6]

The Goerings, former owners of Plaintiffs' property, knew about Plaintiffs' Native American heritage and disapproved of Plaintiffs' changes to the property.[7] In June 2014, Mrs. Goering complained to City of Berea Housing department employee Kathy Palmer, who passed the issue on to Defendants Linda Marginian, secretary and building maintenance code enforcement officer, and Marvin McDonald, building department supervisor and inspector.[8]

Six months later, on December 17, 2014, the City of Berea issued Plaintiffs a notice of zoning violation with four alleged violations,[9] two of which Plaintiffs dispute.[10] Plaintiffs note that Defendant Cedric Fossett was the Berea building inspector at the time.[11]

Plaintiffs remedied all issues noted in the 2014 notice of zoning violation.[12]

Around this time, Plaintiffs began making record requests.[13] Plaintiffs claim that Defendants failed to adequately respond. Plaintiffs also claim that City officials trespassed on their property and selectively enforced the housing code against them.[14]

Defendants argue that they promptly complied with the public records requests.[15]

---

[6] *Id*. at 7; Doc. 17-1 at 8-9, 51-52. Defendants argue that Plaintiff's Cherokee heritage is unverified. Doc. 16 at 3 n.3.
[7] Doc. 1 at 7; Doc. 16 at 2. Plaintiff Samuel Conrad had an exchange with Mr. Goering in 2005 in which Conrad told Goering of his Cherokee background. Doc. 1 at 7.
[8] *Id*. (citing Doc. 1-16, email from Kathy Palmer to Defendants Marginian and McDonald); Doc. 16 at 3. Defendant McDonald now works at the Berea Development Corp. Doc. 1 at19.
[9] Doc. 1-17. The notice stated that Plaintiffs needed to (1) scrape and paint all peeling paint on the home and decking; (2) repair/replace deteriorating front entrance door steps; (3) cut back the bush on the north side of the driveway so it would not block the sidewalk; and (4) repair the south side of the home's foundation. *See id*. at 1.
[10] Doc. 23 at 3-4. Specifically, Plaintiffs argue that the front entrance door steps were and foundation were in good condition. In their opposition to summary judgment, Plaintiffs suggest all violations were a sham. Doc. 23 at 11.
[11] Doc. 1-17.
[12] Doc. 1 at 9; Doc. 16 at 8.
[13] Doc. 1 at 9-10; Doc. 16 at 3. Record requests continued through 2015, Doc. 1 at 14, and 2016, *id*. at 20.
[14] Doc. 23 at 4. For example, Plaintiffs argue that Defendant Marginian created a "separate excel spreadsheet file" from the city's main document system that includes Plaintiffs and details their violations. *Id*. at 10. Plaintiffs also allege that their neighbors committed similar violations of the housing code that were never addressed by Defendants. Doc. 1 at12. Plaintiffs go on to state that Defendants turned over photographs showing that an inspector trespassed on their property—in violation of Berea policy—when taking photos during inspections. *Id*. at 1, 3 (citing Doc. 23-6).
[15] Doc. 16 at 3.

2

Case No. 1:16-CV-2525
Gwin, J.

In early October 2015, Plaintiffs claim that Defendant Fossett returned to their property and accused them of further zoning code violations.[16] On October 12, 2014, the City issued Plaintiffs a second notice of zoning violation with three violations.[17] Plaintiffs allege multiple motives for the October 12 notice[18] and argue that neighbors were never cited for similar violations.[19] Plaintiffs remedied the violation in part by cutting back plants from the sidewalk and clearing trash from their yard.[20]

On October 22, 2015, Plaintiffs appealed the notice of violation to the Planning Commission.[21] Defendant Alycia Vale Esson, planning commission secretary and clerk of city council, emailed Plaintiffs to inform them that their appeal would go before the Commission on December 3, 2015.[22]

In the meantime, Defendant McDonald contacted Plaintiffs to schedule a meeting with Defendant Mayor Cyril Kleem.[23] The parties met on November 16, 2015.[24] Afterwards, Defendants McDonald, Fossett, and Kleem did a "walk-by" inspection of the property.[25]

On November 25, 2015, Defendant Mayor Kleem issued Plaintiffs a letter notifying them that based on their meeting and Kleem's inspection of the property, the City "formally withdr[ew] the Notice of Violation."[26]

---

[16] Doc. 1 at 11; Doc. 23 at 4. Plaintiffs argue that Defendant Fossett "aggressively confronted" Geraldine Conrad.
[17] Doc. 1-22. The notice stated that Plaintiffs needed to (1) cut back all vegetation from the public sidewalk by October 21, 2015; (2) remove all trash/debris from the rear of their property; and (3) keep grass and weeds from growing above six inches by October 21, 2015. *Id*.
[18] Doc. 1 at 12 -13. Specifically, Plaintiffs state that Defendant Marginian told them that various neighbors and passersby complained about the state of Plaintiffs' home and lawn. *Id.* Plaintiffs claim to have spoken with their neighbors who all denied complaining. Doc. 23 at 10.
[19] Doc. 23 at 5. Plaintiffs argue that their neighbors were never cited for trash or overgrown vegetation. *Id*.
[20] Doc. 17-1 at 15.
[21] Doc. 1 at 15.
[22] *Id*.
[23] *Id*. at 16.
[24] *Id*.
[25] Doc. 16 at 4. Plaintiffs allege that the walk-by never occurred. Doc. 1 at 17.
[26] Doc. 1-31.

3

Case No. 1:16-CV-2525
Gwin, J.

Because the City withdrew the notice, Plaintiff's appeal was moot. Thus, Plaintiffs' case was removed from the December 3, 2015 Planning Commission agenda.[27] Despite the City's withdrawal of the notice of violation, Plaintiffs continued to pursue records requests and purchased surveillance equipment to monitor potential trespassers.[28]

Plaintiffs believe that violations are still pending against them based on a spreadsheet produced in discovery.[29] Defendants state that no violations are currently pending, and the spreadsheet showed open violations due to clerical or scriveners error.[30]

On October 14, 2016, Plaintiffs filed a complaint against Defendants City of Berea and individuals Mayor Cyril Kleem, Linda Marginian, Alycia Vale Esson, Marvin McDonald, and Cedric Fossett.[31] Plaintiffs allege (1) selective enforcement of Berea's housing code in violation of the Equal Protection Clause; (2) abuse of process; (3) retaliation for exercising their First Amendment rights; (4) unreasonable searches and unconstitutionality of Berea Building Code 1345.01 in violation of the Fourth Amendment.[32] A *Monell* claim accompanies each argument.[33]

On February 20, 2017, Defendants filed a motion for summary judgment.[34] Defendants argue they are entitled to relief because (1) there is no evidence of selective enforcement; (2) the Sixth Circuit does not recognize a federal abuse of process claim; (3) there is no evidence of a retaliation claim; (4) Plaintiff's Fourth Amendment rights were not violated; (5) Plaintiffs cannot support a *Monell* claim; and (6) individual defendants are entitled to qualified immunity.[35]

Plaintiffs argue that all of their claims present a genuine dispute of material fact.[36]

---

[27] Defendant Esson notified Plaintiffs in an email. Doc. 1-30.
[28] Doc. 1 at 19. Plaintiffs argue that their property values have fallen as a result of the notices. Doc. 23 at 8.
[29] *Id*. at 20; Doc. 23 at 1 (January 2017 record stated Plaintiffs' violation was "open and pending").
[30] Doc. 16 at 5.
[31] Doc. 1.
[32] *Id*. at 21, 25, 27, 28, 30.
[33] *Id*. at 25, 27, 28, 31.
[34] Doc. 16.
[35] *See* Doc. 16.
[36] Doc. 23 at 9-20.

4

Case No. 1:16-CV-2525
Gwin, J.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[37] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[38] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[39] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[40] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[41]

When parties present competing versions of the facts on summary judgment, a district court adopts the non-movant's version of the facts unless the record before the court directly contradicts them.[42] Otherwise, a district court does not weigh competing evidence or make credibility determinations.[43]

## III.  DISCUSSION

Defendants are entitled to summary judgment on all of Plaintiffs' claims.[44]

**A. Plaintiffs cannot support a selective enforcement claim**

Plaintiffs argue that Defendants selectively enforced Berea's Exterior Maintenance Code against them based on their Cherokee heritage when neighboring properties were in similar

---

[37] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).
[38] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[39] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[40] *Id.* at 586.
[41] *Killion*, 761 F.3d at 580 (internal citation omitted).
[42] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).
[43] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).
[44] The Court acknowledges Defendants' motion to exclude hearsay testimony, particularly conversations between Plaintiffs and City of Berea Council Member Gene Zacharyasz. Doc. 24 at 3. However, because it is unnecessary to consider this evidence to dispose of Plaintiffs' claims, the Court does not address the evidentiary issue.

5

Case No. 1:16-CV-2525
Gwin, J.

condition.[45] For example, Plaintiffs state that their neighbors had overgrown hedges over the sidewalk, the code violation Plaintiffs were charged with.[46]

The Equal Protection Clause prohibits the selective enforcement of laws based on arbitrary classifications.[47] To successfully plead a § 1983 claim of selective enforcement, "plaintiffs must satisfy the following three elements: (1) a state actor must single out a person or persons belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations; (2) he must initiate the prosecution with a discriminatory purpose; and (3) the prosecution must have a discriminatory effect on the group to which plaintiff belongs."[48]

The standard for establishing a selective enforcement claim is a "demanding one."[49] State actors benefit from a "strong presumption" that they have properly discharged their duties; only "clear evidence" to the contrary will overcome this presumption.[50]

Defendants argue that Plaintiffs cannot satisfy any element of a selective enforcement claim. The Court agrees.

As to the first element, Defendants argue that Plaintiff Sam Conrad cannot show he is a

---

[45] Doc. 1 at 21. Plaintiffs also argue that they have been singled out as a "class of one" due to their Cherokee heritage. Doc. 23 at 11. The Court finds a "class of one" theory ill-fitting here. "When a plaintiff does not allege that the government's actions burden a fundamental right or target a suspect class, the plaintiff is said to proceed on a so-called class of one theory and must prove that the government's actions lacked any rational basis." *Ziss Bros. Const. Co. v. City of Indep., Ohio*, 439 F. App'x 467, 475–76 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich.*, 470 F.3d 286, 296–97 (6th Cir. 2006)). Plaintiffs argue that their Cherokee heritage—which implicates a fundamental right—is the impetus for selective enforcement. *See* Doc. 1 at 21-24. Therefore, a class of one theory does not apply here. And, even if it did, Plaintiffs would be less likely to succeed on that claim as a rational basis standard is more favorable to Defendants.
[46] *Id.*; *see also* Docs. 1-17, 1-22.
[47] *See Stemler v. City of Florence,* 126 F.3d 856, 873-74 (6th Cir. 1997).
[48] *Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 382 (6th Cir. 2016).
[49] *Stemler,* 126 F.3d at 873.
[50] *Id.*

6

Case No. 1:16-CV-2525
Gwin, J.

member of an identifiable group, the Cherokee Nation.[51] Even assuming he is, however, "it is an absolute requirement that the plaintiff make at least a prima facie showing that similarly situated persons outside her category were not prosecuted."[52]

Plaintiffs cannot do so. In fact, Plaintiffs defeat their own argument. Plaintiffs note that 54 out of roughly 342 properties in Plaintiffs' "extended neighborhood" received building code violations over a 12-month period.[53] These odds demonstrate that Berea prosecuted people "outside [the Plaintiffs'] category." Thus, Plaintiffs fail to satisfy the first element.

Nor can Plaintiffs satisfy the second element. Defendants claim they were unaware of Plaintiff Conrad's heritage until Plaintiffs filed their complaint.[54] Plaintiffs do not show this to be untrue.

Plaintiffs admit that they never explicitly told City employees of Plaintiff Samuel Conrad's Cherokee heritage until 2015—after both citations were issued[55]—but argue "[Defendants] *should* have known" earlier.[56] Plaintiffs cannot rely on what Defendants "should have known," however, to show that Defendants had a discriminatory purpose in citing them for housing code violations.

Furthermore, Defendants had a permissible motive in issuing citations—maintaining the aesthetics of the community.[57] Plaintiffs argue that these citations were "fictitious creations,"[58]

---

[51] Doc. 24 at 4.
[52] *Stemler*, 126 F.3d at 873 (citing *United States v. Armstrong*, 517 U.S. 456 (1996)).
[53] Doc. 23 at 11 (citing Doc. 23-10); *see also* Doc. 17-1 S. Conrad deposition (admitting that "there are people other than [the Conrads] who have been cited for having their grass exceed the legal limit and for needing to scrape and paint their dwellings").
[54] Doc. 16 at 6 (citing various affidavits from individual defendants).
[55] Doc. 17-1 at 50-51. Specifically. Plaintiff Conrad said he told Defendant Marginian about his heritage at a meeting on October 19, 2015. The second citation was issued October 12.
[56] Doc. 23 at 10. Plaintiff argues that various context clues would have revealed that he is a Cherokee Indian. For example, Conrad states that they have a medicine wheel in their backyard, he wears a hat with the symbol on it often, and he told the Goerings of his background in 2005. Doc. 23 at 10. Defendant admits, however, that he has no way to know whether the Goerings told any city officials that he is a Cherokee Indian. Doc. 17-1 at 49.
[57] *Franchise Developers, Inc. v. City of Cincinnati*, 505 N.E.2d 966, 967 (Ohio 1987).
[58] Doc. 23 at 11.

7

Case No. 1:16-CV-2525
Gwin, J.

but their compliance implicitly acknowledges that there were viable problems to address.[59]

Rather than target Plaintiffs individually, Defendants pursue aesthetic upkeep across the community.[60] Therefore, the Court finds insufficient evidence of discriminatory purpose.[61]

Accordingly, the Court **GRANTS** Defendants summary judgment on the selective enforcement claim.

### B. Plaintiffs' federal abuse of process claim fails.

Although Ohio "recognize[s] an abuse-of-process cause of action,"[62] the Sixth Circuit does not recognize a federal abuse of process claim under 42 U.S.C. § 1983.[63]

In their complaint, Plaintiffs cite to an Ohio Supreme Court opinion in support of their abuse of process claim.[64] But in their opposition to summary judgment, they clarify that they "aspir[e] to establish a federal cause of action" and do not bring an Ohio state law claim.[65]

Because the Sixth Circuit does not recognize a federal abuse of process claim, the Court **GRANTS** Defendant's motion for summary judgment on the abuse of process claim.

### C. Plaintiffs cannot support a retaliation claim

Plaintiffs argue that their removal from the December 3, 2015 Planning Commission meeting agenda—and their resulting inability to appeal the 2015 notice of violation—amounted to impermissible retaliation for exercising their First Amendment right to petition the

---

[59] *Id*. at 1. For example, Plaintiffs painted and trimmed bushes in response to the 2014 citation which stated Plaintiffs needed to "scrape and paint all peeling paint" and "cut back the bush on the north side of the driveway." Doc. 1-17 at 1. Regardless of whether Plaintiffs meant simply to "accommodate" the city rather than comply, Doc. 23 at 1, they complied nonetheless. Plaintiffs never heard from the City regarding the 2014 citation after trimming the bush and painting. Doc. 17-1 at 13-14.
[60] *See supra* at 8 n.57.
[61] Because the Court finds against Plaintiffs on the first and second elements, the third element is not addressed.
[62] *Id*. (citing *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 626 N.E.2d 115 (1994)).
[63] *Moore v. WesBanco Bank, Inc.*, 612 F. App'x 816, 823 (6th Cir. 2015) (citing *Rapp v. Dutcher*, 557 F. App'x 444, 448 (6th Cir. 2014); *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 676 (6th Cir. 2005)).
[64] Doc. 1 at 25-26; Doc. 23 at 12.
[65] Doc. 23 at 20.

8

Case No. 1:16-CV-2525
Gwin, J.

government.[66] At bottom, Plaintiff argues that when Defendants gave up, the Defendants prevented Plaintiffs from bringing their appeal forward in a public setting.[67]

Defendants argue that no retaliation occurred here. Rather, Plaintiffs won their appeal argument and "accomplished the goal of their appeal—to have the notice of zoning violation dismissed."[68]

In the Sixth Circuit, a "retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."[69]

Plaintiffs succeed on the first element—the First Amendment protects the right to "petition the Government for redress of grievances."[70]

Plaintiffs fail, however, to show an adverse action. Plaintiffs argue that in retaliation for exercising their rights and criticizing the government, Defendants wrongfully removed them from the Berea Planning Commission's agenda and kept them from appealing the building code violations. Plaintiffs were only removed from the agenda, however, because Plaintiffs had already received their requested relief—having the citations withdrawn.[71] Plaintiffs argue that

---

[66] Doc. 1 at 27-28.
[67] Doc. 23 at 13-16. Plaintiffs cite other retaliatory conduct, but lack evidentiary support tying the conduct to Defendants. For example, Plaintiffs observed a "Berea Police car slowly driving" by their property, "a woman trespassing" on their property, and "footage show[ing] a vehicle with a white male driving to the back of the[ir] driveway." *Id.* at 14. Regardless of whether these incidents are attributable to Defendants, Plaintiffs' central complaint appears to be inability to present their full appeal in a public forum.
[68] Doc. 16 at 11.
[69] *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).
[70] U.S. Const. amend. I; *see also Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010).
[71] Plaintiffs argue that the violations are still pending, Doc. 23 at 1 (noting a January 2017 record stating that Plaintiffs' violation was "open and pending"), but city officials assure Plaintiffs that all violations were withdrawn. Doc. 16-3. The Court takes the city at its word—if citations were still pending, the Court assumes the city would still be pursuing their resolution. Plaintiffs have not received another citation since October 2015.

9

Case No. 1:16-CV-2525
Gwin, J.

they "were denied their due process right to a hearing,"[72] but where the subject of a hearing is moot, a hearing would be fruitless. Due process gives citizens a right to hearing to protect liberty or property interests. Due process does not give citizens a right to a hearing when the citizen has no threatened liberty or property interest.

Plaintiffs argue that "by shifting [their appeal] from the Jurisdiction of the Planning Commission (where Plaintiffs' criticisms and evidence would become public record) to" a meeting with Defendants Mayor Kleem and McDonald, their rights were violated.

Plaintiffs' argument misses the mark. Having a meeting with the Mayor as opposed to going before the local Planning Commission would not "deter a person of ordinary firmness" from continuing to engage in protected conduct.[73] Quite the opposite, individual attention from the Mayor would likely demonstrate to a person of ordinary firmness that she and her grievances were being taken seriously.

Because Plaintiffs cannot satisfy the second element of a retaliation claim, the Court **GRANTS** Defendants summary judgment.

### D. Plaintiffs were not subject to an unreasonable search

Plaintiffs argue that Defendant Fossett could not have taken various photos of their home without trespassing on, and therefore unconstitutionally searching, their property.[74] Defendants respond that Defendant Fossett did not trespass on Plaintiffs' property, and even if he did, Plaintiffs' Fourth Amendment rights were not violated.[75]

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be

---

[72] Doc. 23 at 14.
[73] *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).
[74] *See* Doc. 1 at 28-31; Doc. 23 at 16.
[75] Doc. 16 at 19.

10

Case No. 1:16-CV-2525
Gwin, J.

violated, and [that] no Warrants shall issue, but upon probable cause . . . ."[76] Fourth Amendment protections attach when a "search" occurs—an oftentimes difficult determination to make.[77] Courts analyze this issue by asking "(1) has the individual manifested a subjective expectation of privacy in the object of the challenged search? and (2) is society willing to recognize that expectation as reasonable?"[78]

"Naked-eye" observations of a home's exterior from a neighboring property or sidewalk "are not Fourth Amendment searches."[79] When one observes a home from its curtilage—"the area immediately surrounding a home that harbors the intimate activity associated with the sanctity of a man's [or woman's] home"—more constitutional protection attaches.[80]

However, "the Fourth Amendment does not absolutely bar all government encroachment upon the curtilage."[81] In the Sixth Circuit, a city employee "does not conduct a Fourth Amendment search by entering the curtilage for the [] purpose of naked-eye observations of the house's plainly visible exterior attributes . . . all without touching, entering or looking into the house" during an "administrative inspection."[82]

Here, photographs of Plaintiffs' property taken by Defendants during their inspections suggest that Defendants may have trespassed on Plaintiffs' property.[83] It does not appear, however, that Defendants entered the curtilage of Plaintiffs' property.[84]

---

[76] *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 578 (6th Cir. 2005) (citing U.S. Const. amend. IV) (emphasis changed).
[77] *Id.* (citing *Kyllo v. United States*, 533 U.S. 27, 32 (2001)).
[78] *Id.* (citing *Katz v. United States*, 389 U.S. 347 (1967); *California v. Ciraolo*, 476 U.S. 207, 211 (1986)) (internal quotations omitted).
[79] *Widgren*, 429 F.3d at 581.
[80] *Widgren*, 429 F.3d at 582 (citing *United States v. Dunn*, 480 U.S. 294, 300 (1987)) (internal quotations omitted).
[81] *Id.* at 582.
[82] *Id.* at 585–86.
[83] Doc. 17-2 at 75-82
[84] *See id.*

11

Case No. 1:16-CV-2525
Gwin, J.

Even assuming Defendants trespassed on the curtilage of Plaintiffs' property, those actions do not amount to a Fourth Amendment violation. City officials may enter a residence's curtilage and make naked-eye observations of the houses' exterior for administrative purposes. [85] This case fits that bill: Defendants took photos of the property's exterior to determine whether building code violations existed, "all without touching, entering or looking into the house."[86]

Plaintiff argue that because "high definition computer camera equipment" was used during the inspections,[87] the *Widgren* rule does not apply. The Court disagrees.

Under the Fourth Amendment, "[a]ssessing the degree of intrusion requires addressing both the methods used and the purpose for the intrusion."[88] Defendants' method—a simple camera as opposed to unique technology[89]—and Defendants' purpose—an administrative assessment as opposed to a criminal investigation—both suggest a lesser degree of intrusion.

"Naked-eye observations" refer to those observations one can make by simply looking at a home. Whether City officials took a photo to capture that vision is largely irrelevant.

Plaintiffs also try to differentiate this case from *Widgren* by arguing that Defendants were not pursuing a zoning inspection or a tax assessment, two motives mentioned in *Widgren*.[90] This argument also fails.

As noted above, "the purpose for the interference bears upon the intrusiveness of government action. A criminal investigation is generally more intrusive than an administrative or regulatory investigation."[91] Thus, what matters is not whether Defendants were investigating

---

[85] *Widgren*, 429 F.3d at 585–86.
[86] *Id*.
[87] Doc. 23 at 17.
[88] *Widgren*, 429 F.3d at 583.
[89] *Id*.
[90] *Id*.
[91] *Id*.

12

Case No. 1:16-CV-2525
Gwin, J.

zoning, tax, or building code violations, but that Defendants were pursuing an administrative investigation.

No Fourth Amendment violations occurred here.

Plaintiffs' also argue that Berea Building Code 1345.01 is unconstitutional because it allows the Building Inspector to "enter, examine and survey at all reasonable times all dwellings, dwelling units and premises," thereby allowing warrantless searches.[92] Plaintiffs cite *Camara v. Mun. Court of the City & County of San Francisco*[93] in support. But *Camara* is distinguishable from this case.

In *Camara*, the Supreme Court held that a local ordinance allowing "municipal officials to *enter a private dwelling* without a search warrant" was unconstitutional under the Fourth Amendment.[94] *Camara* is "distinguishable [from this case] in that [it] presume[s] an entry of a structure, not the naked-eye observations of the structure's exterior."[95] This case fits in the latter category.

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiffs' Fourth Amendment claim.

E. **Plaintiffs cannot support their *Monell* claims**

Plaintiffs also bring *Monell* claims against Defendant City of Berea for each of the four arguments discussed above. "[U]nder § 1983, local governments are responsible only for their own illegal acts."[96] Municipalities are not vicariously liable for their employees' actions unless "the challenged conduct occurs pursuant to a municipality's "official policy," such that the

---

[92] Doc. 1 at 30; Doc. 23 at 16.
[93] 387 U.S. 523 (1967).
[94] *Camara*, 387 U.S. at 527 (emphasis added).
[95] *Widgren*, 429 F.3d at 584 n.3.
[96] *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (citing *Connick v. Thompson,* 563 U.S. 51, 60 (2011) (internal citation and quotation marks omitted)).

13

Case No. 1:16-CV-2525
Gwin, J.

municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights."[97]

Defendants argue that because Plaintiffs cannot show that Defendants violated their constitutional rights, no *Monell* claims may proceed.[98] The Court agrees.

Plaintiffs argue that the City of Berea has a variety of policies that support *Monell* claims.[99] This argument fails as these alleged policies relate directly to the substantive arguments the Court dismissed above.[100]

Plaintiffs also argue that because Berea Building Code 1345.01 is unconstitutional, it supports a *Monell* claim.[101] The Court also denied this particular argument above.[102]

Last, Plaintiffs argue that City officials customarily ignore Berea's policies, such as a prohibition against trespassing while conducting building inspections or staying proceedings once an appeal is filed.[103] Plaintiffs' arguments are self-defeating—Berea has "official policy" *against* these actions, not in support of them.[104]

The Court therefore **GRANTS** Defendants' motion for summary judgment as to all of Plaintiffs' *Monell* claims.

---

[97] *Id*. (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 692 (1978)).
[98] Doc. 16 at 14-15.
[99] Doc. 23 at 18. These policies include "routine trespass; unreasonable search; interference with the reasonable expectation of privacy; interference with the assertion of due process, the petition of government, free speech, and the practice of religion rights []; [and] selective action against a protected class."
[100] *See* supra, Sections III A-D.
[101] Doc. 23 at 18.
[102] *See supra*, Section III-D.
[103] Plaintiffs state that a stay is required under Berea Municipal Code 103.03. Doc. 23 at 15.
[104] Despite these official policies, a *Monell* claim could survive if Plaintiffs could show "a custom of tolerance [of] or acquiescence [to] federal rights violations" in violation of Berea's policies. *D'Ambrosio*, 747 F.3d at 386 (citing *Burgess v. Fischer,* 735 F.3d 462, 478 (6th Cir. 2013)). Plaintiffs have not provided evidence, however, of federal rights violations. Thus, their *Monell* claim fails.

14

Case No. 1:16-CV-2525
Gwin, J.

### F. Individual defendants are entitled to qualified immunity

Finally, Defendants argue that even if some liability attaches, all individual defendants are entitled to qualified immunity.[105]

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[106] To determine whether qualified immunity applies, the court looks to whether the plaintiff (1) presents facts that make out a violation of "a clearly established constitutional right," and if so, (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."

Because Plaintiffs fail to provide material evidence sufficient to make a constitutional claim, no qualified immunity is necessary. But, had Plaintiffs succeeded, individual defendants would have otherwise been entitled to qualified immunity because Plaintiffs failed to show that Defendants violated any clearly established right.

### IV. CONCLUSION

For the reasons above, this Court **GRANTS** Defendants' motion for summary judgment.

IT IS SO ORDERED.

Dated: March 20, 2017                    *s/         James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE

---

[105] Doc. 16 at 16.
[106] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).